The argument this morning is Foster v. Principal Life Insurance. Good morning, Your Honors. This is Francis Foster. Mr. Foster, you will be called when we're ready. Okay. We let everybody get a seat first. Mr. Foster. Good morning, Your Honors. This is Francis T. Foster on behalf of Francis T. Foster, the plaintiff appellant. I'd like to point out that this case is a case that's ripe for some re-judgment because this case, the issue involved is authority and authority is a matter of law. So I'd like to go to the plan documents. The plan documents are very clear that the plan administrator consists of a committee of equal number of management. Mr. Foster, if we're aware of the facts, the reason you lost this case is because the district judge said you needed to prove damages and set a date at which that could be done. And then, according to the district judge, you notified the court that you had no intention of doing that. And final judgment was then entered. Having passed on an opportunity to show damages in the district court, what is there left to appeal? Well, my motion for summary judgment was a motion for liability to determine that principal was liable to me and then to grant equitable relief. My request was for equitable relief, not damages. You can apply any label you want. You want money. And the judge said, you have to show your entitlement to it. And you told the judge you weren't planning to. That's the issue. I told the judge that I didn't claim any damages after...  No, Your Honor. If you claim an entitlement to one point some odd million dollars, you've decided that's not damages because you're applying a different word to it. The judge thought it was money you were seeking. But Your Honor, I was claiming future damages, if you will. Damages from August 1st on. That's standard damages in law. Yeah, future damages. You don't get an injunction to pay money. But she only blocked me out. She said that I can't claim any damages as of July 31st. And my damages were for August 1st and onward. She said that I could not claim any damages after July 31st, 2012. And the only damages that I'm claiming is from August 1st on. I was paid in full up until July 31st, 2012. And that payment was a result of the resignations, correct? There was no resignations. It was based on the planned committees terminated me as of July 31st. I thought the resignation was part of the settlement. Are you now denying that you resigned? I deny in my briefs that I resigned. I've always did. What about the settlement? Your Honor, this is important. That resignation was part of the settlement agreements. But I never delivered a resignation to the planned committees. The planned committees were my employers. So was that not a part of the settlement agreement? Your resignation? The planned committees were not part of the settlement agreement. The settlement agreement was between me and Pace. The planned committees were not a part of that. And did the settlement agreement include a provision requiring you to resign in part in exchange for the settlement? The settlement agreement provided that I would resign after the planned committees paid all my bills up to July 31st. And they did pay all of your bills. And they did pay all my bills. And they terminated me. That was a termination by the planned committee. The settlement agreement provided that I would resign after the planned committees terminated. So are you saying that the planned committees just beat you to the punch, that you were going to have to resign because of the settlement agreement, but they fired you first? No, it was in the settlement agreement that they would fire me. They weren't really firing me. They couldn't perform their contract because principal life would not pay my compensation. The planned committees could not. The planned committees didn't want to terminate me. They just couldn't pay my compensation because principal life, who's the custodian of the funds, would not pay my compensation. So they were in breach of the contract, the planned committees. They had no choice but ultimately to end this thing and terminate me. So I don't understand this thing about damages. I'm only claiming damages after August 1st. Principal life caused my termination. They caused this to happen. This sounds increasingly like you just regret the settlement. The settlement entailed your resignation. But the settlement wasn't between my employer. After someone resigns, you don't get paid. But I think you're now regretting that. You know, Your Honor, the settlement agreement shouldn't have even been admitted under section 408 of the federal rules. The settlement agreement was with a third party. You have to distinguish between the parties here. There's a planned committee, and that was my employer. And then there's Pace, who's telling. Did you make an argument based on rule 408 in your brief? Yes, of course. And I did it at the lower level, too. And I also pointed out, you know, this was in the Seventh Circuit before, you know. Are you aware of that, that this case was in the Seventh Circuit? We don't get to cross-examine the judges. I'm sorry. I'm sorry. Apologize. But anyways, in that case, the court ruled that the settlement was no bar to my seeking recovery against principal. And all my damages would accrue on August 1, 2012. So I didn't give up any damages. I'd like to talk about a resignation in theory. If you have an employee who's getting paid, and he resigns, you tell the employee, well, look, you may have a beef to the prior compensation. But the future compensation, you resign. You can't claim any of that. But that's not true when you have an employer who stops paying you. When your employer stops paying you, and you resign, you're just relinquishing your duties to that employer because you're not being paid. But it's relevant to the causation, right? Right. I mean, you were clearly in a war with management here and management representatives on the plan committees. But that's not principal rights. Right. The plan committees requires consensus to do anything. Both the union plan committee member and the management plan committee have to agree to terminate me. Which they didn't do. Pace went to the custodian of the funds, principal, and told him, stop paying foster. So that caused the plan committees to be in breach of their employment agreements to me. So we tried to get this straightened out. But ultimately, it went on for 17 months. I went on for 17 months without pay. But they paid you. They paid you for everything. For those 17 months. But this whole thing wouldn't have happened if principal just paid my compensation, as they're supposed to do, as the trustee and custodian of the funds. They were directed by the plan committees in 2003 to pay my compensation. And how was that not resolved by the settlement agreement? How was what not resolved? How was that not resolved by the settlement agreement? Because the settlement agreement wasn't with the plan committee. It was just with Pace. The terms of the settlement agreement, you indicate that you've voluntarily signed it, that you've resigned. And that is from that point backwards. But I didn't really resign. I resigned only after the motion to pay bills, which was a termination motion by the plan committee. Paragraph 6 says, foster resignation as counsel for the plans. I'm reading from the settlement agreement. Yeah, but prior to that, there was a conditioned precedent that all the plans had to pay me through July 31. That was the 17 months of pay. Though the plan committees, as a conditioned precedent to the settlement, they had to pay me those sums of money. All the plans had to agree to this, and they did. They paid me my wages through July 31, 2012. Thank you, Mr. Foster. You're welcome. Mr. Becker. Thank you, Your Honor. Good morning. May it please the court, Theodore Becker on behalf of Defendant Principal Life Insurance Company. I would like to point out that obviously a settlement is a settlement, and the terms of the settlement agreement aren't writing. They're plain to see. Mr. Foster agreed to resign from the plan committee's representation, and he said he did so voluntarily in the settlement agreement. So I think in terms of whatever regrets he may have, as you mentioned, Judge Easterbrook, with regard to whether or not he should have entered into the settlement agreement, whether he likes the settlement agreement, whether he's unhappy about not being the attorney for the plans anymore, that's all water under the bridge. More over the dam. Over the dam, under the bridge, and through the cracks. And through the cracks, especially if it's my basement. But in any event, what does this all have to do with principal? Principal is a paymaster, like ADP. That was its goal, its role. And it got a direction pursuant to a contract, a service and expense agreement, for six, seven years to pay Mr. Foster's monthly retainer. And then it got a direction pursuant to the services and expense agreement to submit all bills, all invoices, not just for Mr. Foster, but for anybody else except principal, to the plan representative for specific review and authorization. And it followed both those directions. It had no choice. Under the services and expense agreement, it's entitled to rely on such notice, such direction. It's not required or obligated to go behind such notice or direction or inquire into the reasons. And it faithfully served its contractual obligation. Had principal continued to pay Mr. Foster after it received the notice from Mr. Ellion, the plan representative, to submit future invoices, Mr. Foster's or anybody else's, for his review and specific approval or non-approval, then principal would have been in breach of its contract, the services and expense agreement. And so it was in the middle. That's where principal was. And it couldn't defy the notice that it received. And therefore, it did not pay Mr. Foster. There's no tortious interference related to this at all. There's no evidence of tortious interference. I know that Mr. Foster has said that a principal interfered with his employment. But the record clearly shows no such interference at all. The main element that the court below ruled on against Mr. Foster, of course, was the lack of damages, because his resignation cut off any further damages that he could have claimed. And he was fully paid for the work that he did prior to the resignation. But the record evidence also shows that there was no tortious interference. In fact, he doesn't meet any of the elements, not just damages. The first element is reasonable expectation of entering into a valid business relationship. He had no reasonable expectation of continuing a business relationship after he resigned. The second is the defendant's knowledge of the expectation. That's principal's. Principal had no knowledge of what was going on until much later. By the time that principal received Mr. Ellion's direction and stopped paying Mr. Foster, the dispute had already arisen between Mr. Foster and the plans. Principal had nothing whatsoever to do with that dispute. Learned about the facts much later when principal, not knowing what to do, started a compliance investigation. That's certainly the opposite of intentional. That's quite reasonable. Principal is getting letters to Mr. Foster saying, pay me. And they're not getting any directions to pay him. So they start a compliance review to figure out what they're supposed to do in the nature of an interpleader, by analogy. But I think that the third element is the one that really cries out here. Intentional, purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship. There's absolutely no evidence of that in the record whatsoever. And there's a full record. After the court remanded from the first appeal, which was on a 12B6 motion, a full record was developed. There was full discovery. Mr. Foster had the opportunity to take discovery, and he did. Principal took discovery, submitted cross motions for summary judgment. It's quite a sizable record. And there's not any evidence that Mr. Foster could point to. And there is, in fact, no evidence of intentional interference by principal in any way, shape, or form. Principal didn't have it out for Mr. Foster. Principal was just trying to do its job and comply with his contract. The district court correctly granted summary judgment in favor of principal, because Mr. Foster cannot show that he was damaged by principal's alleged interference. Mr. Foster admits he was fully compensated for the work. He did so again in open court today, through July 2012, when he signed the settlement agreement with Pace, and he agreed to resign. The only damage that Mr. Foster now claims that he suffered as a result of principal's alleged interference is harm to his continued expectancy to work for the plans until retirement. However, Mr. Foster cannot claim those damages after he voluntarily resigned for the plans. And Mr. Foster, in his brief, even at page 26, says that his expectancy to work for the plans, as he claims without any evidence till age 72 or 75, was unless he resigned. So by his own admission, his resignation cuts off any further expectancy. And the evidence also shows that he could have no reasonable expectancy to continue to work for the plans, given the fact that all had broken loose with regard to Mr. Foster's attorney-client relationship between the plans and Pace and the union. There was warfare going on. Principal didn't know anybody about it. But nevertheless, there was no, if you look at that evidence, there's no expectancy of Mr. Foster continuing to represent these plans, whether he resigned or not. But he did resign. And he can't claim damages after he voluntarily resigned. So the undisputed evidence shows that principal was not the proximate cause of any damage that Mr. Foster suffered. He was fully paid for everything that he was entitled to, and he got it pursuant to the settlement. And his resignation was a condition of the settlement. Principal had no knowledge of Mr. Foster's so-called expectancy to work for the plans until his retirement, when he ever chose to retire. And that was all cut off in any event by his voluntary resignation. So even if Mr. Foster could establish some claim for damage after July 2012, he cannot, as I mentioned, establish any of the remaining elements that would entitle him to have a claim, make out a claim against principal for tortious interference with prospective economic advantage. The law and the facts make it clear that principal life is entitled to judgment in its favor as a matter of law, and the district court's judgment should be affirmed. Are there any questions? Then I'll relinquish. Thank you, Mr. Becker. Thank you. The case is taken under advisement. Our third case.